746 So.2d 947 (1999)
Oliver JOHNS a/k/a Oliver Johns, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-01303-COA.
Court of Appeals of Mississippi.
March 23, 1999.
Rehearing Denied July 27, 1999.
Certiorari Denied October 14, 1999.
*948 Ronald L. Whittington, McComb, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
BEFORE BRIDGES, C.J., COLEMAN, AND IRVING, JJ.
IRVING, J., for the Court:
¶ 1. Oliver Johns was arrested and charged with one count of aggravated assault and one count of shooting into a motor vehicle. These charges arose from events which occurred on March 28, 1996. Johns was tried by jury in the Circuit Court of Pike County, Mississippi and found guilty and sentenced to twenty years in the custody of the Mississippi Department of Corrections and ordered to pay restitution in the amount of $1,948.42 to Kendall Jefferson and court costs. Johns appealed to this Court and raised the following issues:
I. THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE IMPROPER TESTIMONY REGARDING MR. JOHNS' CHARACTER AND ALLEGED PRIOR ACTS.
II. THE TRIAL COURT ERRED IN ALLOWING HEARSAY TESTIMONY DURING DIRECT EXAMINATION OF KENDALL JEFFERSON BY THE PROSECUTOR.
III. THE PURPORTED VERDICT FAILS TO COMPLY WITH AND CONFORM TO THE REQUIREMENTS OF RULE 3.10 OF THE UNIFORM CIRCUIT AND COUNTY COURT RULES.
IV. THE TRIAL COURT ERRED IN GRANTING INSTRUCTIONS C-2 AND S-8.
¶ 2. After thoroughly reviewing the record in this case, we find no merit to the arguments raised by Johns. We, therefore, affirm the trial court.

Facts
¶ 3. Kendall Jefferson and Oliver Johns became acquainted sometime prior to March 28, 1996. The trial record does not disclose when this acquaintance was made. Sometime prior to trial a Sunflower Supermarket in McComb, Mississippi was robbed. The record is equally silent as to when this occurred. Kendall Jefferson worked at this store for nine months, but the year or span of this employment is not shown in the record.
¶ 4. Apparently, sometime after the robbery and before March 28, 1996, Ramon Johns, a cousin of Oliver Johns, was arrested and indicted for armed robbery of this Sunflower store. During this time frame there were encounters between Kendall Jefferson and Oliver Johns and the testimony of each individual contradicts that of the other regarding who initiated the altercations. The testimony is *949 clear that the two did not enjoy a good relationship prior to March 28, 1996.
¶ 5. On March 28, 1996, a car driven by Jefferson was struck several times with bullets fired by someone from another car. Jefferson was wounded in his left index finger and suffered a graze injury to the upper portion of his left arm. At the trial, Jefferson testified that just prior to the shooting, Jefferson passed Oliver Johns' automobile, side by side, at which time Jefferson "looked at [Johns] dead in the face." He further testified that Johns was the man behind the wheel and that there was another man in the vehicle with Johns. It was also Jefferson's testimony that he did not know who actually did the shooting, but that the shots were fired from the vehicle being driven by Oliver Johns.
¶ 6. On the day of the shooting, Kendall Jefferson and Oliver Johns had encountered each other two times at different convenience stores in McComb, Mississippi. They saw one another at a Conoco Quick Stop and at a business known as B.J.'s. At B.J.'s there was some conversation between the two men, according to Rushard Haynes, a witness who testified that he was then with Jefferson. Haynes, however, did not hear their conversation. Johns testified that at B.J.'s he was threatened by Jefferson. Kendall Jefferson gave testimony of threats against him by Johns.
¶ 7. Jefferson also testified that Johns threatened him at his job at the Sunflower Supermarket. It was during this encounter at the Sunflower that Jefferson testified that Johns accused Jefferson of "snitching on" Oliver Johns' cousin, Ramon Johns, regarding the robbery at Sunflower. Jefferson further testified that a couple of days after the Sunflower incident he and Johns got into a fight and that Johns ran. Jefferson went on to testify that he told his grandmother of these threats and altercations and that based on her advice he went to Oliver Johns' job at a Pizza Hut restaurant to try and resolve their differences. According to Jefferson, Oliver Johns is quoted as having said, "We ain't. We ain't leaving nothing alone and tell your grandma she ain't got to worry about keeping you out after you dead. Just tell her you're already dead." Jefferson stated that after the Pizza Hut incident things "died down"until March 26, 1996.
¶ 8. With respect to the shooting incident, both Haynes and Jefferson testified that at around 8:00 p.m., Oliver Johns followed Jefferson's car and that shots were fired from John's car into Jefferson's car. Johns took the stand in his own defense and denied that he followed Jefferson and denied that anyone in his car fired a gun into Jefferson's car.

DISCUSSION OF LAW

I. DID THE TRIAL COURT ERR IN ALLOWING INTO EVIDENCE IMPROPER TESTIMONY REGARDING MR. JOHN'S CHARACTER AND ALLEGED PRIOR ACTS?
¶ 9. Appellant Johns begins his argument by suggesting that a violation of Rule 404 of the Mississippi Rules of Evidence occurred as a result of the admission into evidence of Kendall Jefferson's and Rushard Haynes' testimony regarding the character and prior acts of Oliver Johns. Johns applies this same argument to the opening statements that were made by the prosecutor regarding the Sunflower armed robbery, for which Oliver Johns' cousin was charged, and to closing argument statements by the prosecution regarding the several acts of confrontation between Jefferson and Johns. Johns concludes that the aforementioned testimonies of Rushard Haynes and Kendall Jefferson together with the opening statements about the robbery and closing statements about the altercations between Jefferson and Johns, in effect, urged the jury to find that Oliver Johns acted in conformity therewith (and would again so act), all in violation of Rule 404 of the Mississippi Rules of Evidence.
*950 ¶ 10. Johns is correct in his argument that Rule 404(a) M.R.E. precludes the admission of evidence of a person's character or a trait of his character for the purpose of proving that he acted in conformity therewith. He is also correct when he argues that Rule 404(b) M.R.E. precludes the admission of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that he acted in conformity therewith. However, such evidence is admissible under Rule 404(b) for other purposes, such as proof of motive. Proof of motive was the purpose for which the prosecution argued and was granted permission to have said evidence admitted. This court finds that its admission was proper. Additionally, this court finds that the trial court properly and judiciously granted jury instruction C-2, a cautionary or limiting instruction, which provided a further safeguard against the possibility that another offense was considered for impermissible purposes, i.e., to imply that at the time of the March 26, 1996 shooting incident, Johns was acting in conformity with his established character.
¶ 11. Johns argues that even if the evidence, which he characterizes as a violation of Rule 404, is relevant, the trial court failed to properly apply the balancing test mandated by Rule 403 of the Mississippi Rules of Evidence and weigh the probative value against "the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Miss. R. Evid. 403, Watts v. State, 635 So.2d 1364 (Miss.1994). In order to address this portion of Oliver Johns' argument, this court needs only to quote from the record:
THE COURT: All right, sir. The test that the Court has to make first is under 401, is it relevant? A threat by the defendant against the victim would be relevant. Would it be helpful to the trier of fact? It would to show motive. Is it's probative value substantially outweighed by any danger of unfair prejudice, confusion of the issues or misleading the jury? It is not. Rule 404(b) allows testimony concerning motive and if there has been a threat by the defendant to the victim, then I think its admissible and I will allow it.
MR. SMITH: We're ready to proceed, Your Honor.
THE COURT: I really don't know if this is on all fours with 404(b) or not, but to the extent that the balancing test is necessary, then I rule that the probability out-weighs any prejudicial, any possible prejudicial effect. And we'll also do a limiting instruction to be submitted to the jury to instruct them that this evidence is being admitted not to show character of the defendant, but to show they can consider it as far as any motive the defendant might have. Bring the jury back.
¶ 12. It is clear from the above-quoted passage that Oliver Johns' claims on this point are baseless. The trial judge followed, to the letter, the instructions set forth in Smith v. State, 656 So.2d 95, 100 (Miss.1995) which says, in pertinent part, "We say for the future, however, that whenever 404(b) evidence is offered and there is an objection which is overruled, the objection shall be deemed an invocation of the right to MRE 403 balancing analysis and a limiting instruction." Smith, 656 So.2d at 100.
¶ 13. Oliver Johns argues that there was no showing of when the alleged prior acts, i.e., prior threats, were made at Sunflower or Pizza Hut, and, therefore the trial court could not properly determine relevancy without this foundational information. He cites Tillis v. State, 661 So.2d 1139 (Miss.1995) for the proposition that evidence that is remote is a function of relevancy.
¶ 14. This court takes issue with appellant's contention that there was no showing of when the alleged prior acts, i.e., prior threats, were made at Sunflower or Pizza Hut and that the trial court, therefore, *951 lacked the proper foundation to rule on the question of admissibility. It is clear from the record that conflict ensued from the first meeting between Kendall Jefferson and Johns. It had its beginning at a time when Jefferson worked at Sunflower and continued up to the day of the shooting on March 28, 1996. In Parr v. State, 362 So.2d, 634, 636 (Miss.1978), the Supreme Court approved of admitting evidence of threats made as much as thirteen months before the killing. In that case the court noted, "The record indicates that for a period before the threats were made up until the date of the homicide, there was hostility, bitterness and ill will between appellant and his wife [the deceased]. Such a situation rendered the threats relevant and competent." Parr, 362 So.2d at 636. Even though Parr predates the Mississippi Rules of Evidence, the Supreme Court in Tillis v. State, 661 So.2d 1139 (Miss.1995), (citing May v. State, 524 So.2d 957, 965 (Miss.1988)) stated that the "new Rules of Evidence may incorporate our pre-Rules precedent to some extent." The May court goes further to say ".... Rule 401 defines relevant evidence very broadly, and it would seem that evidence of threats made ... some 10 months before the murder, would have a tendency to `make the existence of any fact that is of consequence to the determination of the action more probable or less probable', especially in a circumstantial evidence case. The court would thus again be faced with the question of whether the trial judge abused his discretion in admitting the testimony under Rule 403 USCA." May, 524 So.2d at 965. This court's answer to that question is that the trial judge acted properly and well within the parameters of his discretion.
¶ 15. Lastly, Oliver Johns argues that on the authority of Watts v. State, 635 So.2d 1364 (Miss.1994), the admission of evidence of an armed robbery and threats related thereto requires the reversal of his conviction. This court would emphasize that no testimony whatsoever was either given or elicited that suggested that appellant was in any way involved in the armed robbery. In fact, quite the opposite is true. The jury was clearly informed that it was the appellant's cousin, Ramon Johns, and not the appellant, who had been charged. Consequently, since no testimony gave indication that appellant was involved in the robbery, no prejudicial effect could have been brought to bear upon the jury. Holifield v. State, 275 So.2d 851 (Miss.1973).

II. DID THE TRIAL COURT ERR IN ALLOWING HEARSAY TESTIMONY DURING DIRECT EXAMINATION OF KENDALL JEFFERSON BY THE PROSECUTION?
¶ 16. Oliver Johns contends that his state and federal constitutional rights were violated and reversible error was committed when the trial court allowed into evidence Jefferson's testimony about discussions he (Jefferson) had with his grandmother and her advice to him. He contends that the result was to improperly bolster Jefferson's testimony and put hearsay testimony before the jury.
¶ 17. We begin with the question of whether Jefferson's testimony constituted inadmissible hearsay. The hearsay is alleged to have occurred during the direct examination of Kendall Jefferson when he was testifying about the Pizza Hut incident. He was asked ... "When was the last time that you saw Oliver Johns?" He responded, "Well, I told my grandma about it and she told me I needed to let all that stuff." At this point the defense objected. The trial court overruled the objection finding that the testimony was not being offered for the truth, but in order to explain what he did. When the testimony resumed Jefferson was asked whether he told his grandmother about the trouble he (Jefferson) was having with Johns. He answered in the affirmative. He was then asked if his grandmother gave him any advice. Again, he answered in the affirmative. Then he was asked what he did based on that advice and he answered, "I went to Pizza Hut ... to try to talk ... *952 And he asked me why I wanted to squash it and I told him about the conversation I had with grandma and I understood where my grandmother was coming from and I was going to leave it alone."
¶ 18. When Jefferson started to testify about what his grandmother said to him, defense counsel objected, and Jefferson stopped speaking after he said "... she told me I needed to let all that stuff." The objection was overruled and that ruling was accompanied by a comment from the trial judge that it was being allowed not for the truth, but in order to explain what he did. When Jefferson's testimony resumed, no hearsay ensued. Jefferson was asked if his grandmother gave him any advice and whether he did anything as a result. He answered "yes", and told what he did. On the authority of Nicholson on Behalf of Gollott v. State, 672 So.2d 744 (Miss.1996), this court finds no hearsay in any of these exchanges. Under the facts of that case, a witness was allowed to testify that she had a conversation with the deceased which caused her to closely observe the deceased's apartment. The trial court instructed the witness to testify only to what she did as a result of her conversation. The Mississippi Supreme Court held that, since the witness did not testify as to what the deceased said, but only to its effect, the witness did not testify as to hearsay.
¶ 19. Johns' argument that the State's cross-examination of him evoked hearsay is equally void and without merit. In that exchange Johns was asked whether Jefferson went to Pizza Hut to try to settle the matter as he said he did after talking with his grandmother. Johns answered "Yeah. He came to Pizza Hut." This did not constitute hearsay.
¶ 20. This court's finding of no inadmissible hearsay renders Johns' allegations of state and federal constitutional violations null and void.

III. DID THE VERDICT FAIL TO COMPLY WITH AND CONFORM TO THE UNIFORM RULES OF CIRCUIT AND COUNTY COURT
¶ 21. Johns argues that it was error for the trial court to submit a duplicate form of verdict instruction, i.e., jury instruction S-3, because in doing so, the court caused a verdict to be returned that did not satisfy the requirement of Rule 3.10 of the Uniform Rules of Circuit and County Court that the court receive a written verdict. This court agrees with the State's characterization of this argument as placing form over substance. There were multiple counts in the indictment and the verdict could have taken one of several different forms. Instruction S-3 did nothing more than provide a list of alternative forms for the verdict and space where the jury could indicate its choice. Once a verdict was reached and the jury marked its decision on the form and handed it to the clerk, as instructed by the court, the requirement of Rule 3.10 was satisfied. There is guidance to be found on this issue in the case of Wilson v. State, 197 Miss. 17, 19 So.2d 475 (1944). In that case, the Mississippi Supreme Court held that, "The general rule, ... is that ordinarily the verdict is sufficient in form if it expresses the intent of the jury so that the court can understand it, 22 Eng.Pl. & Pr. p. 891; or that the test of the validity of a verdict is whether or not it is an intelligible answer to the issue submitted to the jury, 64 C.J. p. 1067." Furthermore, Miss.Code Ann. § 99-19-9 (1972), strikes a fatal blow to Johns' argument. Said statute reads as follows: "No special form of verdict is required, and where there has been a substantial compliance with the requirements of the law in rendering a verdict, a judgment shall not be arrested or reversed for mere want of form therein."

IV. DID THE TRIAL COURT ERR IN GRANTING INSTRUCTIONS C-2 AND S-8?
¶ 22. Johns argues that instruction C-2 peremptorily instructed the jury that prior conflicts between Kendall Jefferson and Oliver Johns had, in fact, taken place and that the consequence of the jury following the instruction was to ignore Oliver *953 Johns' testimony and explanations concerning these incidents. This court finds no merit to this argument. Instruction C-2 is a proper form of limiting instruction that does no more than what was intended of limiting instructions. It informed the jury that the evidence was only offered in an effort to show motive and that the jury was to give it such weight and credibility as it deemed proper under the circumstances. It further instructed the jury not to consider the testimony in any way regarding whether Oliver Johns was guilty or not guilty of the charge for which he was being tried.
¶ 23. Secondarily, Johns argues that jury instruction S-8 was abstract and confusing. It reads as follows:
The Court instructs the Jury that every person who assists, aids or abets another in the commission of a crime is equally as guilty as those who actually commit the crime. However, the Court further instructs you that before you can find a person guilty of aiding and abetting in the commission of a crime, you must find from the credible evidence, beyond a reasonable hypothesis consistent with innocence, that such person or persons arranged for, counseled or commanded another to commit the crimes of aggravated assault and shooting into a vehicle.
Mere presence by a person or persons at the scene or [sic] a crime is not enough to prove participation in it.
¶ 24. While the quoted instruction should have been tailored to the facts of this case, this Court, given the totality of the circumstances, does not find the instruction to be either abstract or confusing. There was testimony in the record, from two witnesses, that there were two individuals in the automobile from which the shots were fired. Both of those witnesses further testified that Oliver Johns was the driver of that automobile. However, neither of the witnesses could say, for certain, whether Johns actually did the shooting. This court finds that, under the circumstances, this was a proper instruction. As the Supreme Court explained in Hoops v. State, 681 So.2d 521 (Miss.1996), "Any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an `aider and abettor' and is equally guilty with the principal offender." Sayles v. State, 552 So.2d 1383, 1389 (Miss. 1989) (citing Bullock v. State, 391 So.2d 601 (Miss.1980). cert. denied, 452 U.S. 931, 101 S.Ct. 3068, 69 L.Ed.2d 432 (1981)).
¶ 25. We are of the opinion that the appellant, Oliver Johns, received a fair trial and that there is no reversible error in the record. The judgment of the lower court is affirmed.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF RESTITUTION TO KENDALL JEFFERSON IN THE AMOUNT OF $1,948.42 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR.