785 So.2d 297 (2001)
Marcus D. HOWARD a/k/a Marcus Deshawn Howard a/k/a `Black Capone', Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00284-COA.
Court of Appeals of Mississippi.
February 13, 2001.
Rehearing Denied May 22, 2001.
*298 Mark S. Howard, Waynesboro, Attorney for Appellant.
Office of the Attorney General by W. Glenn Watts, Jackson, Attorney for Appellee.
Before McMILLIN, C.J., PAYNE, and LEE, JJ.
LEE, J., for the Court:
¶ 1. Marcus Deshawn Howard was convicted for the murder of Latoya Gandy and was sentenced to life imprisonment in the *299 Mississippi Department of Corrections. Initially, Howard's trial counsel did not file an appeal. However, Howard filed a pro se motion for out-of-time appeal which was granted. Subsequently, the circuit judge appointed counsel to represent Howard. On appeal Howard asserts the following issues: (1) whether his trial counsel rendered ineffective assistance of counsel when he failed to timely appeal his case to the Mississippi Supreme Court, (2) whether the trial judge erred when he admitted photographs of the deceased, Latoya Gandy, into evidence, and (3) whether the trial judge erred when he allowed the State to refer to Howard as "Black Capone." Finding these issues without merit, accordingly, we affirm the trial court.

FACTS
¶ 2. Howard concedes that he was responsible for shooting Gandy. However, Howard asserted that Gandy also played a role in her shooting. Howard argued that he did not intentionally shoot Gandy, but that he was merely playing with the firearm when he placed it near her face. Howard claims that the firearm accidentally fired when Gandy threw her arms up and hit the weapon.
¶ 3. Any additional facts will be discussed as necessary to address the issues presented by Howard.

DISCUSSION

I. WHETHER TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HE FAILED TO TIMELY APPEAL HIS CASE TO THE MISSISSIPPI SUPREME COURT.
¶ 4. Howard argues that upon completion of the trial, he informed his trial counsel that he desired to appeal his conviction for the murder of Gandy; however, his trial counsel declined to file an appeal. Howard filed a pro se petition for post-conviction collateral relief and motion for out-of-time appeal. As a result, present counsel, Mark S. Howard, was appointed to represent Howard on appeal. Howard contends that he is prejudiced since his present counsel did not represent him at the lower court level, and now his counsel must determine any errors committed at his trial based only on the record. Additionally, Howard asserts that he has been prejudiced because although he and his attorney have discussed the case, they have never done so in person.
¶ 5. The State contends that there is a lack of record evidence to show that either Howard's trial or appellate counsel have been ineffective.
¶ 6. To prevail on the issue of whether his defense counsel's performance was ineffective requires a showing that counsel's performance was deficient and that the defendant was prejudiced by counsel's mistakes. Strickland v. Washington, 466 U.S. 668, 687-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden is on the defendant to bring forth proof which demonstrates that both prongs of the Strickland test are met. Moody v. State, 644 So.2d 451, 456 (Miss.1994). There is a strong but rebuttable presumption that counsel's conduct falls within a wide range of reasonable professional assistance. Id. at 456. Accordingly, appellate review of counsel's performance is "highly deferential." Strickland, 466 U.S. at 689, 104 S.Ct. 2052. "The deficiency and any prejudicial effect are assessed by looking at the totality of the circumstances." Carney v. State, 525 So.2d 776, 780 (Miss.1988). Howard must prove that it is reasonably probable that "but for" the errors committed by his counsel, the outcome of his trial would have been different. *300 Nicolaou v. State, 612 So.2d 1080, 1086 (Miss.1992).
¶ 7. Howard cites Triplett v. State, 579 So.2d 555, 557 (Miss.1991), to support his argument regarding the deficiency prong of the Strickland test. In Triplett v. State, the Mississippi Supreme Court addressed the issue of ineffective assistance of counsel as it pertains to an attorney's contracted obligation to pursue a timely appeal on behalf of his client, along with the attorney's duty to seek a proper withdrawal from the case when proper grounds exist. Id. It was once again stated that the defendant must prove by a preponderance of the evidence that within the time for filing notice of appeal that he asked his attorney to file the appeal and that through no fault of the defendant the attorney failed to timely perfect the appeal. Id. However, as argued by the State, Triplett is distinguishable from the case at bar. In Triplett, the attorney conceded that he was employed to carry the case through appeal. Id. In the case at bar, other than Howard's broad assertion, we have no evidence to support the conclusion that his trial counsel had contracted and obligated himself to pursue an appeal on Howard's behalf; therefore, Howard's deficiency argument fails. See Ford v. State, 708 So.2d 73, 75 (Miss.1998) (an individual must allege with specificity that but for his or her ineffective assistance of counsel the outcome and the trial court level would have been different); see also Walton v. State, 752 So.2d 452, 456(¶ 11) (Miss.Ct. App.1999) (when witnesses are available to testify regarding allegations of ineffective assistance of counsel, affidavits are required for the witness's testimony); Miss. Code Ann. §§ 99-39-11(2) (Rev.2000); and 99-39-9(1)(c) (Rev.2000). Regardless, even if it were true that Howard's trial counsel was deficient, Howard must also prove that this deficiency prejudiced his case and that "but for" his trial counsel's lack to appeal or properly withdraw from the case the result would have been different.
¶ 8. We determine that since Howard was allowed an out-of-time appeal and has failed to assert and prove how the outcome of his trial would have been different if his trial counsel had initially filed a timely appeal he was not prejudiced. Accordingly, this issue is without merit.

II. WHETHER THE TRIAL JUDGE ERRED WHEN HE ADMITTED PHOTOGRAPHS OF THE DECEASED, LATOYA GANDY, INTO EVIDENCE.
¶ 9. Howard contends that the trial judge erred in admitting photographs taken of Gandy by Dr. Steven Hayne, forensic pathologist, because they were only presented to inflame and prejudice the jury against him. The State asserts that the trial judge did not abuse his discretion in admitting the photographs because the photographs were not gruesome, and as argued before the trial judge, they helped the jury understand the testimony of Dr. Hayne. Additionally, the State argues that the trial judge correctly held that the photographs were more probative than prejudicial.
¶ 10. In Underwood v. State, 708 So.2d 18, 33 (Miss.1998), the Mississippi Supreme Court quoted from Mackbee v. State, 575 So.2d 16, 31 (Miss.1990):
A general rule of this court leaves the admission of photographs into evidence to the sound discretion of the trial judge. Her decision is upheld unless there has been an abuse of that discretion. Stringer v. State, 548 So.2d 125, 134 (Miss.1989). `[P]hotographs which are gruesome or inflammatory and lack an evidentiary purpose are always inadmissible as evidence.' McNeal v. State, 551 So.2d 151, 159 (Miss.1989) quoting *301 McFee v. State, 511 So.2d 130, 135 (Miss.1987).
¶ 11. The record reveals that during the testimony of Dr. Hayne, the photographs of Gandy were entered into evidence. Dr. Hayne testified that he took the photographs of Gandy, and photographs are routinely taken when an autopsy is performed. Dr. Hayne explained that he believed the gunshot wound was fatal and further elaborated on how the photographs showed the bullet's entry and exit wound on Gandy, as well as tattooing on Gandy's eye. The tattooing was significant because if present it indicated that the firearm was shot at close range. The photographs assisted the jury in understanding Dr. Hayne's testimony, as well as confirming the information that was being provided by him. Additionally, the photographs of Gandy focused only on the gunshot wound and did not contain a lot of unnecessary blood or gore. Most of these facts were considered by the trial judge when he weighed their probative value versus their prejudicial effect on the jury. After having viewed the photographs in conjunction with the testimony of Dr. Hayne, we conclude that the trial judge did not abuse his discretion when he admitted them into evidence.

III. WHETHER THE TRIAL JUDGE ERRED WHEN HE ALLOWED THE STATE TO REFER TO HOWARD AS "BLACK CAPONE."
¶ 12. Howard argues that it was error to allow the State to use his nickname "Black Capone" in its opening statement. The comment complained of is as follows: "And then the defendant Marcus Howard, you will sometimes refer to as `Black Capone', as Dan told you on voir dire, `Black.'" Howard contends that the use of his nickname was an attempt to "vilify or abuse" him. Howard argues that his nicknames carry a "loathsome and horrendous connotation." Howard acknowledges that the record is void of a contemporaneous objection to the use of his nickname; nonetheless, he states that the use of the nickname should be addressed by this Court as manifest error. Therefore, Howard requests that based on this alleged error we reverse and remand the case for a new trial with specific instructions not to refer to him as "Black Capone."
¶ 13. We decline to address this issue as manifest error. Instead, we conclude that counsel for Howard had a duty prior to trial to determine whether Howard's nickname could possibly be prejudicial, and if so, to bring it to the attention of the trial judge so that witnesses and others could be instructed not use it. See West v. State, 485 So.2d 681, 686 (Miss. 1985). Another, alternative in an effort to stop the use of Howard's nickname would have been to make a contemporaneous objection at its first use. The record does not reveal that either approach was taken by Howard's attorney. Additionally, according to the record, "Black Capone" is a nickname that Howard gave to himself. Furthermore, testimony from some of the witnesses at trial showed that they knew of and referred to Howard as either "Black" or "Black Capone." Therefore, when "Black Capone" is used in the above context by the State, it simply stated what was proven at trial"Black Capone" was another name by which Howard was known. The use of Howard's nickname in this manner did not create such a prejudice that a new trial is warranted. For the aforementioned reasons, we find this issue is without merit.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF WAYNE COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT *302 OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WAYNE COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, MYERS and CHANDLER, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.