847 So.2d 903 (2003)
James R. SANDERS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-CP-00837-COA.
Court of Appeals of Mississippi.
June 10, 2003.
James R. Sanders, Pro Se.
Office of the Attorney General by W. Glenn Watts, for appellee.
Before KING, P.J., MYERS AND GRIFFIS, JJ.
*904 KING, P.J., for the court.
¶ 1. James R. Sanders perfected this appeal from an order denying post-conviction collateral relief entered by the Circuit Court of Lafayette County, Mississippi. On July 17, 2000, Sanders pled guilty to the reduced charge of murder as part of a plea bargain agreement with the State. Sanders was sentenced to serve a term of life in the custody of the Mississippi Department of Corrections.
¶ 2. On October 24, 2001, Sanders, pro se, filed a petition for post-conviction collateral relief. On May 1, 2002, that petition was dismissed by the trial court. On appeal, Sanders raises the following issues, which we quote verbatim:
I. When the trial court accepted Sanders guilty plea, the trial court did not follow Mississippi law or the Uniform Criminal Rules of Circuit Court Practice by failing to inform James Sanders of the mandatory minimum sentence which he was to receive.
II. There is overwhelming evidence that the defendant's counsel was never in the best interest of defending him, during representation or performance before, or during vital stages of defendant's case.
III. Constitutional rights of defendant have clearly been violated with his ineffective assistance of counsel.
IV. Defendant had no choice but to plea [sic] guilty with repeated threats made by counsel.
V. A preliminary hearing is a constitutional right.

FACTS
¶ 3. On May 21, 1999, Sanders was indicted for capital murder. He was indicted pursuant to Miss.Code Ann. Section 97-3-19(2)(e) (Rev.2000) for the killing of Charles Kenneth Maness during the commission of an armed robbery.
¶ 4. On July 17, 2000, Sanders, represented by appointed counsel, filed a petition to enter a plea of guilty. Paragraph nine of the petition executed by Sanders states that the maximum punishment which may be imposed by the court is death and the minimum punishment which may be imposed is life with parole. Sanders' guilty plea was entered that same day, but his sentencing was deferred until July 19, 2000.
¶ 5. During the guilty plea hearing, the trial judge questioned Sanders to determine whether his plea to the murder charge was knowingly and voluntarily made. Sanders testified that he understood the charge and did in fact commit the crime.
¶ 6. The trial judge asked Sanders whether he understood that by pleading guilty he would waive his constitutional rights including the right to have a speedy trial. Sanders indicated that he understood this waiver of rights. The trial judge also asked Sanders whether anyone had made any threats or coerced him into pleading guilty, to which he responded, "no, sir."
¶ 7. The trial judge questioned Sanders regarding whether any promises had been made to him. Sanders stated that no promises had been made "other than possible life without parole." The trial judge then asked if he understood that this was considered a part of the plea agreement with the State. Sanders indicated that he understood and that no one had made any promises to him.
¶ 8. Upon inquiry by the trial judge, Sanders testified that there was nothing mentally or physically wrong with him which would hinder or prevent him from knowing and understanding what he was *905 doing at the hearing. Sanders also indicated that he was not under the influence of alcohol or any controlled substance at the time of the hearing. The trial judge asked Sanders whether he understood that sentencing is at the discretion of the court, to which Sanders responded affirmatively. The trial judge accepted Sanders' guilty plea after having determined that his guilty plea had been knowingly and voluntarily made.
¶ 9. At the sentencing hearing, the trial court indicated to Sanders that since the charge had been reduced from capital murder to simple murder, that "there was no discretion for sentence." The trial court indicated that "the statute provides for the imposition of a life sentence." Sanders was then sentenced to serve a term of life in the custody of the Mississippi Department of Corrections.

ISSUES AND ANALYSIS
¶ 10. While Sanders alleges five assignments of error, we will combine the related issues and address them accordingly.

I.
Whether Sanders was informed of the maximum and minimum penalties for the crime charged.
¶ 11. Sanders contends that the trial court failed to advise him of the "mandatory minimum sentence" required for the crime charged. However, Sanders' petition to enter a plea of guilty, states that he was informed by his attorney of the maximum and minimum penalties for the crime charged.
¶ 12. The supreme court has ruled that failure by a trial court specifically to inform a defendant of the maximum and minimum sentences may be harmless if the defendant was correctly informed by another source or "if it appears beyond a reasonable doubt that the plea would have been entered anyway." Thompson v. State, 724 So.2d 1070(¶ 14) (Miss.Ct. App.1998). If a trial court fails to advise a defendant of a minimum sentence, the defendant must establish that he was misinformed and "that the case was misrepresented or the defendant expected to receive a lesser sentence." Id.
¶ 13. The record in this case shows that Sanders was informed of the statutory maximum and minimum penalties allowable. Therefore, we find this issue to be without merit.

II.

Whether Sanders' guilty plea was voluntarily made.
¶ 14. Sanders contends that his guilty plea was not voluntarily made. He makes the assertion pursuant to the Mississippi Uniform Post-Conviction Collateral Relief Act of the Miss.Code Ann. Section 99-39-5(1)(f) (Rev.2000).[1] Sanders claims that he "had raised the issue of his history of mental illness" prior to being charged. He maintains that this issue was never investigated prior to his guilty plea. Sanders also claims that he was coerced by his attorney. He asserts that his attorney threatened him with the possibility of going to the gas chamber and that the only way to avoid the death penalty was to plead guilty. Sanders claims that his plea was therefore involuntary because he acted out of fear of the death penalty.
*906 ¶ 15. Pursuant to Rules 8.04(A)(3) and (4) of the URCCC, the trial court must adhere to the following to determine whether a defendant understands the nature of the charge and consequences of his plea:
3. Voluntariness. Before the trial court may accept a plea of guilty, the court must determine that the plea is voluntarily and intelligently made and that there is a factual basis for the plea. A plea of guilty is not voluntary if induced by fear, violence, deception, or improper inducements. A showing that the plea of guilty was voluntarily and intelligently made must appear in the record.
4. Advice to the Defendant. When the defendant is arraigned and wishes to plead guilty to the offense charged, it is the duty of the trial court to address the defendant personally and to inquire and determine:
a. That the accused is competent to understand the nature of the charge;
b. That the accused understands the nature and consequences of the plea, and the maximum and minimum penalties provided by law;
c. That the accused understands that by pleading guilty (s)he waives his/her constitutional rights of trial by jury, the right to confront and cross-examine adverse witnesses, and the right against self-incrimination; if the accused is not represented by an attorney, that (s)he is aware of his/her right to an attorney at every stage of the proceeding and that one will be appointed to represent him/ her if (s)he is indigent.
¶ 16. The plea hearing transcript reveals that the trial court determined that Sanders' plea was voluntary based upon his responses to the court's questions regarding his plea. At the hearing, the trial judge asked Sanders whether there was anything wrong with him mentally or physically which would hinder or prevent him in any way from knowing and understanding what he was doing. Sanders indicated that there was nothing wrong with him.
¶ 17. Furthermore, the trial judge asked Sanders whether he had been threatened or coerced into pleading guilty, to which Sanders responded, "no, sir." However, Sanders claims that because of the trial judge's demand "to tell him that he (Sanders) murdered Charles Kenneth Maness," that he was coerced into pleading guilty by the trial judge as well. The transcript reveals that the following occurred:
Q. You told me that you understand you are pleading guilty to having murdered Charles Kenneth Maness back on the 27th day of December of 1998. Now, you don't have anything to worry about. I'm not going to come back and set this order aside. I want you to tell me what you did that you are pleading guilty to and you tell me you murdered Charles Kenneth Maness. Just tell me about it so that I will know you know what you are pleading guilty to. Okay?
A. Well, Your Honor, I was put in a position, I didn't have no other choice. I was shot myself, you know, from this by this man at the same time.
...
Q. But you did kill him and shoot him with a shotgun?
A. Yes, sir, I did.
Sanders also claims that an evidentiary hearing should have been held to determine whether his plea was voluntary. After the court's inquiry, the trial judge determined that Sanders was aware of his circumstances and the consequences of entering a plea of guilty. The trial judge also determined that Sanders' plea had been freely, knowingly, and voluntarily entered.
*907 ¶ 18. Sanders has not provided this Court with sufficient evidence in support of his claim. Anderson v. State, 749 So.2d 283(¶ 6) (Miss.Ct.App.1999).

III.

Whether Sanders received effective assistance of counsel.
¶ 19. Sanders contends that he did not receive effective assistance of counsel. He claims that his attorney coerced him into pleading guilty by threatening him with the possibility of being sent to the "gas chamber" if he went to trial. Sanders asserts that he told his attorney that he "wanted a jury trial to prove his case. But [sic] attorney failed to comply with his request." He maintains that his attorney only came to see him twice prior to the plea hearing over a period of nearly two years. In his brief, Sanders alleges that he gave his attorney over "28" names of potential witnesses but none of these people were contacted. However, Sanders bears the responsibility of offering proof of facts to support his claim. Howard v. State, 785 So.2d 297(¶ 6) (Miss.Ct.App. 2001).
¶ 20. To establish a claim of ineffective assistance of counsel, Sanders must show a deficiency of counsel's performance that is sufficient to constitute prejudice to his defense. Swift v. State, 815 So.2d 1230(¶ 17) (Miss.Ct.App.2001). In this case, the record is void of evidence to establish a claim of ineffective assistance. Therefore, this claim is without merit as well.

IV.

Whether Sanders was denied a preliminary hearing.
¶ 21. Sanders contends that he was denied a preliminary hearing which is "a constitutional right." He maintains that on or about December 29, 1998, his attorney with the public defender's office waived his (Sanders') right to a preliminary hearing and that in February or March 2000, after visiting him, "refain [sic] himself from (Sanders') case."
¶ 22. The record does not show whether Sanders had a preliminary hearing. However, once the indictment occurs, even had a preliminary hearing not been provided, that question becomes moot. Hogan v. State, 730 So.2d 100(¶ 3) (Miss. Ct.App.1998). The purpose of a preliminary hearing is to explore whether there is probable cause to believe that the defendant has committed an offense. Id. The indictment by a grand jury removes the purpose of the hearing and none need thereafter be conducted. Sanders' indictment appears in the record; therefore, the preliminary hearing issue is unavailing. Id.
¶ 23. THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT DENYING POST-CONVICTION COLLATERAL RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAFAYETTE COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] Miss.Code Ann. Section 99-39-5(1)(f) (Rev. 2000) provides: (1) Any prisoner in custody under sentence of a court of record of the State of Mississippi who claims:

(f) That his plea was made involuntarily....