925 So.2d 840 (2005)
Oliver JOHNS, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-CA-00716-COA.
Court of Appeals of Mississippi.
January 18, 2005.
Rehearing Denied July 26, 2005.
*842 Shawna Anne Murrell, Ridgeland, Kathryn N. Nester, Jackson, attorneys for appellant.
Office of the Attorney General, by Jeffrey A. Klingfuss, attorney for appellee.
Before BRIDGES, P.J., CHANDLER and GRIFFIS, JJ.
CHANDLER, J., for the Court.
¶ 1. Oliver Johns, Jr., was convicted of aggravated assault. After Johns lost his direct appeal, the Mississippi Supreme Court granted his application to proceed with post-conviction relief. In this motion, Johns alleged that the presence of alibi witnesses would have changed the outcome of his trial, and he also alleged ineffective assistance of counsel. After an evidentiary hearing was held, the Circuit Court of Pike County denied Johns's motion for post-conviction relief. Johns appeals, raising the following issues:
I. WHETHER THE CIRCUIT JUDGE ARTICULATED THE CORRECT STANDARD WHEN HE DENIED POST-CONVICTION RELIEF
II. WHETHER THE CIRCUIT JUDGE ERRED IN DENYING JOHNS'S MOTION FOR POST-CONVICTION RELIEF
III. WHETHER THE CIRCUIT JUDGE ERRED IN RELYING ON PERSONAL KNOWLEDGE OF THE CHARACTER OF OLIVER JOHNS, JR'S TRIAL ATTORNEY WHEN REACHING HIS FACTUAL FINDINGS
¶ 2. Finding no error, we affirm.

*843 FACTS

¶ 3. This case arose from an incident on March 28, 1996. While Kendall Jefferson was driving, he was struck with bullets fired by someone from a car that was allegedly driven by Oliver Johns, Jr. The grand jury indicted Oliver Johns, Jr., for one count of aggravated assault and one count of shooting into a motor vehicle. At trial, Jefferson testified that prior to the shooting he passed a vehicle and saw Johns driving; another man was in the passenger seat. According to Jefferson's testimony, Johns's vehicle followed him, and shots were fired from Johns's car into Jefferson's car. Jefferson did not know who actually did the shooting, but he knew that the shots were fired from the vehicle driven by Johns.
¶ 4. Johns denied following Jefferson. According to his testimony, he was at home with his daughter at the time of the shooting. Even though Johns claims that alibi witnesses were able to testify on his behalf, the only witness called by the defense was Oliver Johns, Jr. The jury returned a guilty verdict on aggravated assault and was unable to return a verdict on the charge of shooting into a motor vehicle.
¶ 5. Johns appealed the trial court's conviction. The Mississippi Court of Appeals affirmed the conviction, and the Mississippi Supreme Court denied certiorari. Johns v. State, 746 So.2d 947 (Miss.Ct. App.1999). After a ruling on his direct appeal, the Mississippi Supreme Court granted his application for leave to proceed with a motion for post-conviction relief.
¶ 6. In Johns's motion for post-conviction relief, an evidentiary hearing was held in the Pike County Circuit Court. The issues raised in Johns's motion for post-conviction relief were whether the testimony of alibi witnesses could have changed his conviction, and whether Johns's attorney provided effective assistance. These two issues were not raised on direct appeal. Three witnesses testified that they saw Johns walking in the neighborhood with his daughter at the approximate time of the shooting. All three witnesses testified at the evidentiary hearing and were willing to testify at Johns's trial as to his whereabouts, but none of them were contacted by Johns's attorney.
¶ 7. The circuit judge denied Johns's motion for post-conviction relief and found that Johns had received effective assistance of counsel. The judge relied in part upon his personal knowledge of the attorney's character and veracity. In reaching the conclusion that Johns had not met his burden of proof for post conviction relief and in concluding that Johns received effective assistance of counsel, the judge applied the standard of "reasonable probability that the outcome would be different."

ANALYSIS

I. WHETHER THE CIRCUIT JUDGE ARTICULATED THE CORRECT STANDARD IN ITS DENIAL OF POST-CONVICTION RELIEF
¶ 8. Post-conviction relief shall be granted when there is evidence of material facts, not previously presented or heard, that requires vacation of the conviction or sentence. Miss.Code Ann. § 99-39-5(1)(e) (Supp.2004). Post-conviction relief should be granted when the petitioner has made this showing by a preponderance of the evidence. Turner v. State, 673 So.2d 382, 384 (Miss.1996). The circuit court judge did not use the preponderance of the evidence standard in denying Johns's motion for post-conviction relief. As he issued his ruling from the bench, he stated as follows: "I simply cannot say under the testimony that I have heard today that there is a *844 reasonable probability that the outcome would be different. Reasonable probability. Not just a chance, but a reasonable probability that the outcome would be reversed."
¶ 9. A party has established a case through preponderance of the evidence when he has demonstrated that there is a greater than fifty percent probability that the facts which support his case are true. State v. Oliver, 856 So.2d 328, 331 (¶ 7) (Miss.2003). Reasonable probability, by contrast, is a much more lenient showing. In order to show reasonable probability, the mover must merely show "a probability sufficient to undermine confidence in the outcome." Davis v. State, 743 So.2d 326, 334 (¶ 5) (Miss.1999) (quoting Mohr v. State, 584 So.2d 426, 430 (Miss.1991)). While the circuit court judge used the incorrect standard in denying Johns's motion for post-conviction relief, this incorrect standard resulted in no prejudice to Johns.

II. WHETHER THE CIRCUIT JUDGE ERRED IN DENYING JOHNS'S MOTION FOR POST-CONVICTION RELIEF
¶ 10. To succeed in a petition for post-conviction relief, the defendant bears the burden of proving by a preponderance of the evidence that he is entitled to post-conviction relief. McClendon v. State, 539 So.2d 1375, 1377 (Miss.1989). On appeal, the appropriate standard of review for denial of a post-conviction relief after an evidentiary hearing is the clearly erroneous standard. Reynolds v. State, 521 So.2d 914, 918 (Miss.1988).

A) Whether Johns showed by a preponderance of the evidence the existence of facts that required the vacation of sentence
¶ 11. Testimony at trial showed that the aggravated assault for which Johns was convicted happened some time between 8:00 p.m. and 8:30 p.m, according to the victim's testimony. The police received a call that there had been a shooting at 8:19 p.m. In the time after Johns lost his direct appeal, three of Johns's neighbors gave affidavits and testified at the evidentiary hearing that they saw Oliver Johns, Jr., in his front yard with his daughter some time between 8:00 p.m. and 8:30 p.m.
¶ 12. Reginald Nunnery, one of Johns's neighbors, held a cookout on the evening of March 28, 1996. Mr. Nunnery began his cookout at 8:00 p.m. At 8:15 p.m., he saw Johns with his daughter and invited them to the cookout. At that time, Mr. Nunnery was busy making preparations to start grilling and asked Johns to go to the convenience store to buy some refreshments for him. Johns walked to the convenience store and returned fifteen to twenty minutes later, with the refreshments Mr. Nunnery requested. After Johns delivered the refreshments, he returned to his home. Although Johns told Mr. Nunnery he would try to come back to the cookout, he never did. Mr. Nunnery was sure that he saw Johns after 8:00 p.m. on the night of the incident because, when he grills, he always starts the fire at 8:00 p.m.
¶ 13. Mrs. Nunnery also testified at the evidentiary hearing that she saw Johns between 8:15 p.m. and 8:30 p.m. She was positive that she saw Johns between 8:15 p.m. and 8:30 p.m. because she noted the time on the watch she was wearing. She saw Johns after he had returned from the convenience store. She testified that they were almost finished grilling at this time.
¶ 14. Katie Magee was also a neighbor who had seen Johns that night. She was sitting in her back yard that evening. She saw Johns coming from the direction of *845 the convenience store. Magee noticed nothing unusual about Johns's behavior or demeanor. She and Johns had a conversation that lasted three or four minutes. After their conversation, Johns walked in the direction of the Nunnerys' house. All these events happened shortly after 8:00 p.m., according to her testimony.
¶ 15. The trial judge found the testimony of these three alibi witnesses to be suspicious. On April 2, 1996, police officers interviewed Johns regarding the events that led to the shooting. He stated that he was at home with his young child, but he also said there were no witnesses to verify his alibi. Even though all of Johns's potential alibi witnesses showed a willingness to testify, they made no efforts whatsoever to contact the police to inform them that the State was wrong in indicting Johns. The respective testimonies from Mr. and Mrs. Nunnery contradict each other. While Mr. Nunnery testified that Johns went to the convenience store as he began grilling, Mrs. Nunnery testified that the food was nearly cooked by the time Johns returned from the store. Mrs. Nunnery testified that the chicken was slow-cooked, which suggests that the chicken took much longer to cook than the fifteen minutes it took Johns to go to the convenience store.
¶ 16. At the evidentiary hearing, the memories of all three of the potential alibi witnesses proved to be faulty. Their faulty memories create doubts as to their effectiveness when called upon to testify as to whereabouts on a specific day at a specific time. Even though they claimed to remember the specific date and the specific time they saw Johns, they could not remember the month they signed their affidavits that indicated their willingness to serve as alibi witnesses. Mr. Nunnery testified that he interviewed with the attorney who prepared Johns's appeal in April, 1996, but that attorney was not involved with the case until November, 1996. Even though Mr. Nunnery testified that he was sure it was 8:00 p.m. when he started grilling because he always starts grilling at 8:00 p.m., the trial judge noted that it is very suspicious that a person would always start cooking at exactly the same time. Mrs. Nunnery admitted at the evidentiary hearing that she has a faulty memory. Magee could remember the day and time she saw Johns, but she could not remember the time her neighbors started setting up for the cookout. She also failed to recall when she learned that Johns had been sentenced. Finally, she could not remember the name of the attorney who discussed the case with her prior to the testimony at the evidentiary hearing.
¶ 17. The three alibi witnesses might have led the jury to acquit Johns. However, at the evidentiary hearing the testimony of all three witnesses was impeached, and their memories proved to be unreliable. The effectiveness of these witnesses depends solely on their credibility as to whether they saw Johns between 8:00 p.m. and 8:30 p.m. on March 28, 1996. The testimony they gave at the evidentiary hearing casts doubt on this credibility. None of the alibi witnesses saw Johns for any longer than a few minutes during that evening. The trial judge would be able to grant Johns's application for post-conviction relief only if Johns could prove by a preponderance of the evidence that the outcome of his conviction would be different. While the trial judge conceded that the presence of the alibi witnesses might have led to a different jury verdict, he was unable to hold that the presence of these witnesses, by a preponderance of the evidence, would have changed the outcome.[1] *846 Based on our review of the witnesses' testimony, we are unable to find an abuse of discretion on the part of the trial judge in making this ruling. We are required to affirm.

B) Whether Johns proved that trial counsel was ineffective
¶ 18. There is a two-part test for claims of ineffective assistance of counsel. First, a convicted defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Second, the defendant must show that these acts or omissions prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of proof rests with Johns, and the alleged deficiency is measured within the totality of the circumstances. Hiter v. State, 660 So.2d 961, 965 (1995). A presumption exists that the attorney's representation was competent, with a strong presumption that the attorney's conduct fell within the wide range of professional assistance. Id. (citing Carney v. State, 525 So.2d 776, 780 (Miss.1988); Gilliard v. State, 462 So.2d 710, 714 (Miss.1985)). Appellate review of counsel's performance is "highly deferential." Strickland, 466 U.S. at 689, 104 S.Ct. 2052.
¶ 19. The record confirms that Jackson failed to request a preliminary hearing, filed no pretrial motions, filed no discovery requests, filed no requests for information regarding character evidence to be used at trial, and filed no notice of an alibi defense. Johns's attorney admitted in his testimony at the evidentiary hearing that he was unable to remember some of the details pertaining to his representation of Johns. He was unable to locate Johns's file and could not remember whether he was hired prior to Johns being indicted. He also could not recall whether he allowed Johns to inspect the physical evidence prior to the trial.
¶ 20. In his brief, Johns alleges that his attorney met with him at McDonald's only three times before trial. He alleges that these meetings were short, and the only topic that was discussed was payment of attorney's fees. The testimony from Johns's attorney, however, indicates that Johns and his attorney conferred several times before trial, and also shows that Johns and his attorney talked on the phone frequently. Testimony at the evidentiary hearing confirms that Johns's father, Oliver Johns, Sr., met with Johns's attorney twice, but there was no testimony regarding the exact frequency of meetings with Oliver Johns, Jr.
¶ 21. Johns claims that Jackson rendered ineffective assistance in failing to call alibi witnesses, in failing to file notice of alibi, and in presenting no evidence of Johns's alibi. Johns provided his attorney with all the information his attorney needed to contact and interview the witnesses who testified at the evidentiary hearing. Johns claims that he repeatedly asked his attorney to use this information in Johns's defense and expected his attorney to use this information at trial.
¶ 22. While it is true that Johns's attorney never interviewed the alibi witnesses Johns requested, at the evidentiary hearing Johns's attorney indicated that he had a very good reason for declining to interview these particular witnesses. The attorney refused to interview these clients because he believed the witnesses' testimony was perjured testimony, based on the information Johns gave his attorney. For this reason, we are unable to hold that Johns's attorney *847 failed to render ineffective assistance of counsel for failure to call such alibi witnesses. Furthermore, Johns's lawyer personally came to the neighborhood where the shooting took place and talked to a number of people to see if they could recall what happened or could provide any testimony pertaining to the case. After this investigation, he decided that these potential witnesses would not be helpful. It is not a favored practice to claim ineffective assistance of counsel by complaining that the attorney failed to call witnesses, because the presentation of witnesses is a matter of trial strategy. Boyd v. Estelle, 661 F.2d 388, 390 (5th Cir.1981). Complaints that fall within the realm of trial strategy cannot give rise to an ineffective assistance of counsel claim. Howard v. State, 853 So.2d 781, 796 (¶ 47) (Miss.2003) (quoting Jackson v. State, 815 So.2d 1196, 1201 (¶ 12) (Miss.2002)). Johns claims that his counsel rendered ineffective assistance of counsel because Johns was the only witness who testified at trial. We are unable to hold that the refusal to call alibi witnesses rendered Johns's counsel ineffective.[2]
¶ 23. One of the omissions Johns charged his attorney with was a failure to conduct a preliminary hearing. The purpose of a preliminary hearing is to assess whether the State has a strong enough case to warrant an indictment. Once a defendant has been indicted, that question becomes moot. Sanders v. State, 847 So.2d 903, 907 (¶ 22) (Miss.Ct.App. 2003). Mississippi law does not guarantee a preliminary hearing after the defendant is released on bond, under Uniform Rule of Circuit and County Court Practice 6.05. Johns was already released on bond when his attorney was hired. Therefore, there was no error in the attorney's failure to conduct a preliminary hearing.
¶ 24. The State intended to use character evidence against Johns at trial. Johns claimed that his attorney was ineffective for not inquiring about the specifics of this character evidence. However, there was a good reason for not evaluating this character evidence before trial. The procedures in place in the Pike County Circuit Court make moot an inquiry into the specifics of the character evidence before the trial is held. The Pike County Circuit Court does not address character evidence until the time a party seeks to present it into evidence, at the trial. Thus, motions to suppress character evidence are futile because the judge will not evaluate this evidence until trial, outside the presence of a jury.
¶ 25. The trial judge signed an omnibus order requiring the prosecution and defense to meet and discuss issues such as discovery, witnesses who will testify, and setting a trial date. Johns was present at this meeting.[3] Johns's attorney reviewed all of the State's evidence. The State's evidence gave no indication of any potential alibi witnesses. At this meeting, which was held on October 10, 1996, the date of the trial was set for November 9, 1996. Although Johns claims not to have known about the date of the trial until 9:00 p.m. the night before the trial, Johns was in the room when the trial date was set.
*848 ¶ 26. Johns charged his attorney with ineffective assistance of counsel for failing to file discovery requests from the State. There was no reason to file such a request because Johns's attorney requested and obtained the State's file. He had all the information the State had and was aware of all discovery evidence favorable to Johns from the omnibus meeting. Johns alleges that his attorney did not review the State's discovery file with him, but Johns's attorney specifically remembers reviewing the State's file with Johns.
¶ 27. Johns alleges that his attorney rendered faulty advice regarding the acceptance of the State's plea bargain. He says that his attorney did not discuss the State's plea bargain with him until the morning of the trial. According to Johns, his attorney told Johns that they were certain to win at trial because the State had no evidence against Johns. As a result of this advice, Johns refused the offer. Johns's attorney denies having told Johns that the State lacked credible evidence, and asserts that he informed Johns of the State's plea bargain long before the trial took place.
¶ 28. Johns's attorney testified that he follows a standard procedure with each of his clients whenever the State submits a plea bargain. He always submits the plea bargain to his client and prefaces any advice with an advisement that the decision to accept or reject a guilty plea rests solely with the client. He then explains the possible maximum sentences if his client decides not to plead guilty, and explains the procedures that follow if his client decides to accept the guilty plea. He remembers specifically speaking with Johns about the State's offer. During the conversation, Johns responded that he was innocent, and was very insistent in his refusal to plead guilty to a crime he claimed he did not commit.
¶ 29. Johns claims his attorney failed to prepare him to testify for trial, but Johns's attorney says he has a procedure for preparing his clients to testify. First, he goes over the entire case with his clients. Then, he interrogates his clients as though he is the prosecution and asks his clients questions that the prosecution is likely to ask. He specifically remembers preparing Johns for trial in this way, although he did admit that he could not remember where these preparations took place or who else was present.
¶ 30. The testimony of Johns's attorney at the evidentiary hearing contradicted many of the assignments of error Johns alleges in his motion for ineffective assistance of counsel. Johns alleges that his attorney met with him only three times for short periods of time; that Johns never had the opportunity to review the discovery materials received from the State; that his attorney never discussed whether Johns would testify at trial; that his attorney gave him faulty advice which caused him to reject the State's offer to plead guilty; that Johns did not know when the trial would be held until the evening of the trial; that his attorney failed to inform Johns that no alibi witnesses would be called; and that his attorney failed to discuss trial strategy with Johns.[4] Johns's attorney refuted each of these allegations, although he was unable to remember many of the details concerning his representation of Johns. The circuit court judge's decision to hold Johns's counsel to be effective was therefore based largely on credibility. Issues of credibility are for *849 the trial court, not this Court, to resolve. Jackson v. State, 778 So.2d 786, 789 (¶ 16) (Miss.Ct.App.2001). The judge weighed the evidence and concluded that the testimony of Johns's attorney was credible. We are unable to find an abuse of discretion in the circuit court judge's holding that Johns's attorney rendered effective assistance of counsel.
¶ 31. There is no need to discuss whether Johns's attorney's performance as counsel prejudiced the defense. If the post-conviction application fails on either of the Strickland prongs, the proceedings end. Neal v. State, 525 So.2d 1279, 1281 (Miss. 1987).

III. WHETHER THE CIRCUIT JUDGE ERRED IN RELYING ON PERSONAL KNOWLEDGE OF THE CHARACTER OF OLIVER JOHNS, JR'S TRIAL ATTORNEY WHEN REACHING HIS FACTUAL FINDINGS
¶ 32. When the circuit court judge held that John's attorney provided competent assistance of counsel, he relied in large part upon his personal knowledge of the attorney's character and veracity. He stated:
I have seen [Oliver Johns, Jr.'s attorney] try enough cases in the Court that if he knew of an alibi witness, he would go and talk to them. The trials that he's tried in my Court, there's absolutely no doubt about [Oliver Johns, Jr.'s attorney's] truth and veracity. I have yet to find John tell me anything that didn't add up or didn't, you know, wasn't so. And I've seen him, his win-loss ratio is as good as any attorney in this county as far as the number of cases that he wins. I can't believe that he would know of an alibi witness and would not go talk to the alibi witness and put the alibi witness on the stand.
¶ 33. Johns argues that these comments make it clear that the judge had already formed an opinion about the quality of legal services Johns's attorney rendered. Johns believes these strong opinions about Johns's attorney should have required the judge to recuse himself. The test for recusal is as follows: "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." McGee v. State, 820 So.2d 700, 711 (¶ 33) (Miss.Ct.App.2000) (quoting Mississippi Code of Judicial Conduct Canon 3 (1995)). We are unable to find evidence that the circuit court judge showed any signs of bias in favor of Johns's attorney. The judge apparently knew about the attorney's reputation solely through the attorney's trying cases within the judge's court. This is not a justifiable reason for recusal.
¶ 34. The hearing judge at the evidentiary hearing was the same judge who presided over Johns's trial. The claim for ineffective assistance was in regards to a trial that happened nearly seven years prior to the evidentiary hearing. Johns's attorney understandably remembered only a few details pertaining to this case, and the prior experiences Johns's attorney had with the trial judge necessarily came into play. There is no error for the judge to rely in part upon his prior experiences with Johns's attorney. "Some of the time the unspoken intangible may be the judge's perception of the [attorney] arising from past experience. The fact that the judge spoke about this on the record does not by itself cause us to find error." Collins v. State, 817 So.2d 644, 656 (¶ 32) (Miss.Ct.App.2002). Likewise, we are unable to find error in relying on the past experiences the trial judge had with Johns's attorney in deciding whether Johns's attorney rendered effective assistance *850 of counsel. Defense counsel's general reputation and experience can be a relevant consideration that a judge may consider. Leatherwood v. State, 473 So.2d 964, 971 (Miss.1985). We are unable to reverse the circuit court judge for basing his opinions in part upon the reputation of Johns's attorney. Therefore, this assignment of error is without merit.
¶ 35. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY DENYING POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING J., CONCURS IN RESULT ONLY.
NOTES
[1] The trial judge actually used a "reasonable probability" standard, which, as we explained, is a lower standard than preponderance of the evidence.
[2] Johns also claims that his attorney was ineffective for failing to make an opening statement at trial. An attorney's decision not to deliver an opening statement is considered a strategic decision. Cabello v. State, 524 So.2d 313, 318 (Miss.1988) (quoting Gilliard v. State, 462 So.2d 710, 714 (Miss.1985)).
[3] Johns's attorney actually could not remember for sure whether Johns was present, but he assumes Johns was present, because circuit court judges highly recommend that the defendant be present at the omnibus meeting.
[4] Oliver Johns, Jr. did not testify at the evidentiary hearing. All of his allegations came from an affidavit.